UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KENNETH WAYNE PRIMUS                    CIVIL ACTION

VERSUS                                 NO. 24-165

CAPTAIN PARETTI, ET AL.                SECTION: "J"(3)

## REPORT AND RECOMMENDATION

Defendants Daniel Fleischman, Rhonda Simmons, Stephen Paretti, Lieutenant Aaron Mendow, Corporal Van Halen, Corporal Hannah Kairdolf, Deputy Michael Cartner, Deputy Brandon Dussouy and Deputy Julian Harrington filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Because defendants filed records relating to an investigation of Primus's complaint under the Prison Rape Elimination Act of 2003 ("PREA"), 42 U.S.C. § 15601 et seq., as well as jail surveillance footage, the Court converted the motion to one for summary judgment. The parties received notice of the conversion, defendants received an opportunity to supplement their motion, and Primus was provided with additional time to respond.[2]

Defendants filed a supplemental memorandum along with a statement of undisputed facts and additional evidence.[3] Primus opposed the original motion.[4]. He filed his own statement of disputed[5] and a second opposition.[6] The sole evidence

---

[1] R. Doc. 78.
[2] R. Doc. 89.
[3] R. Doc. 96.
[4] R. Doc. 92.
[5] R. Doc. 120.
[6] R. Doc. 123.

submitted by Primus is jail surveillance footage related to an incident of October 11, 2023.[7] Having considered the memoranda, the record, and the applicable law, it is recommended that defendants' motion for summary judgment be granted.

## I.    Background

Primus, a state pretrial detainee, filed this *pro se* and *in forma pauperis* civil action under 42 U.S.C. § 1983. In his third amended complaint, he named as defendants Warden Fleischman, Assistant Warden Simmons, Captain Paretti, Lieutenant Mendow, Corporal Kairdolf, Corporal Van Halen, Deputy M. Cartner, Deputy B. Dussouy, Deputy Harrington, and Nurse McKnight.[8] The allegations in his third amended complaint mainly relate to incidents that occurred on three dates: October 11, 2023 (sexual assault), November 1, 2023 (excessive force), and November 21, 2023 (confinement with alleged perpetrator of October 11 assault).

## II.    Standards of Law

### A.    Summary Judgment

Summary judgment is appropriate if a movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when its resolution might affect the case's outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[7] R. Doc. 115.
[8] R. Doc. 69. Defendant McKnight is not subject to the motion for summary judgment. Although Primus originally named as defendants Sheriff Randy Smith, Lieutenant Moore, Sergeant Harrison, and Travis Martin, they are no longer parties to the operative complaint. The Clerk of Court should update the docket sheet to terminate their names.

248 (1986). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *S. Ins. Co. v. Affiliated FM Ins. Co.*, 830 F.3d 337, 343 (5th Cir. 2016) (quoting *Anderson*, 477 U.S. at 248). Courts resolve factual controversies in favor of the nonmoving party. An actual controversy, however, exists only "when both parties have submitted evidence of contradictory facts." *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (quotation omitted). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Summary judgment is proper when "a party [] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. Once the moving party shows "that there is an absence of evidence to support the non-moving party's cause," the nonmoving party must come forward with "specific facts" showing a genuine factual issue for trial. *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002)(citing *Celotex*, 477 U.S. 317 at 325).

Congress amended Rule 56(c) in 2010 to "permit[] a party to support or dispute summary judgment through unsworn declarations, provided their contents can be

3

presented in admissible form at trial." *Patel v. Texas Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019)(determining that the district court abused its discretion when it refused to consider unsworn expert reports at summary judgment). But whether presented by affidavit or unsworn declaration, statements must be based on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4). Statements made without personal knowledge are not capable of being presented in an admissible form at trial. *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 208 (5th Cir. 2018). These principles are "particularly relevant where a *pro se* plaintiff's allegations form his entire response in opposition to summary judgment." *Id.* (citing *Davis v. Fernandez*, 798 F.3d 290, 294–96 (5th Cir. 2019).

### B.    Section 1983

Section 1983 authorizes claims against a person who, acting under color of state law, deprived the claimant of any rights secured by the Constitution and the laws of the United States. *See* 42 U.S.C. § 1983. The statute is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 n.3 (5th Cir. 1999). A plaintiff must satisfy three elements to establish § 1983 liability: (1) deprivation of a right secured by the Constitution or laws of the United States; (2) occurrence under color of state law; and (3) causation by a state actor. *Victoria W. v. Larpenter*, 369 F. 3d 475, 482 (5th Cir. 2004) (citation omitted).

## III.    Analysis

Primus has alleged claims against defendants in their individual[9] and official capacities.  Each will be considered in turn.

### A.    Defendants are not liable for placing Primus in Cell 2 nor for failing to detect and intervene in his alleged sexual assault.

Primus alleges that Taylor, another inmate, sexually assaulted him on October 11, 2023, and sues multiple defendants in connection with the incident. Defendants Fleischman, Simmons, Paretti, and Van Halen, however, had no alleged personal involvement in the events of October 11, 2023. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Thus, these defendants are entitled to summary judgment on that basis alone.

Primus claims certain other defendants (Mendow, Cartner, Kairdolf, Van Halen, Dussouy, and Harrington), are liable for placing him in the cell with Taylor, failing to protect Primus, or failing to intervene during the assault. The unrebutted evidence, however, confirms that they are not liable under § 1983.  In support of summary judgment, defendants submitted certified copies of Primus's PREA complaint, the related Unusual Occurrence report, the extensive investigative report, and the offense incident report related to the PREA complaint—all of which support judgment.[10]  In opposing summary judgment, Primus submitted only limited jail

---

[9] Defendants have invoked their qualified immunity defense, but the Court need not reach it given the analysis herein.

[10] R. Doc. 78-2 at 1–2, R. Doc. 78-3 at 1–11; R. Doc. 78-4 at 1–60; R. Doc. 78-7 at 1–11; R. Doc. 78-8 at 1–60.

surveillance footage from October 11, 2023.[11] The footage confirms the undisputed fact that Primus was placed in a cell with Taylor, but it does not portray subsequent events, including the alleged result. In any event, the issue under § 1983 is not whether a sexual assault occurred, but whether defendants violated the plaintiff's constitutional rights relative to the assault.

The Eighth Amendment's prohibition on cruel and unusual punishment imposes a duty on prison officials to "'protect prisoners from violence at the hands of other prisoners.'" *Williams v. Hampton*, 797 F.3d 276, 280 (5th Cir. 2015) (citing *Farmer v. Brennan*, 511 U.S. 825, 832–83 (1994) (omission in original)). This right extends to pretrial detainees through the due process clause of the Fourteenth Amendment. *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996).

The law does not require that prison officials prevent all inmate-on-inmate violence. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). A plaintiff must show that he was "'incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.'" *Pogue v. Bello*, No. 01-30383, 2001 WL 1467095, at *1 (5th Cir. Oct. 25, 2001) (citation omitted). Mere negligence in failing to protect a prisoner from assault does not establish a constitutional violation. *Adames*, 331 F.3d at 512.

The undisputed evidence shows that Primus and three other inmates (Taylor, Stapleton, and Parker) shared a rolled cigarette containing an unknown substance.[12]

---

[11] R. Doc. 115. Defendants stated that they had no objection to the submission of the jail surveillance video. R. Doc. 116 at 2.
[12] R. Doc. 78-4 at 16 (sealed).

They were given medical attention for resulting adverse reactions.[13] They were then referred to a suicide observation area.[14] Primus's last video clip shows him walking, with assistance of deputies, into suicide observation cell number 2 ("Cell 2"), with the other three inmates who had shared the cigarette.

Although Primus alleged (without giving any specifics) that the three other inmates had a history of sexual assault, none of the Cell 2 inmates had a meritorious PREA complaint filed against them.[15] Furthermore, Taylor's criminal history includes no charges or convictions for sex-related offenses.[16] And, while a *pro se* inmate's unsworn statements may be considered for summary judgment purposes, Primus's statement that Taylor had a "reputation" as a sexually aggressive inmate does not save his claims. Even if Primus could testify as to his subjective belief, there is no sign that Primus could establish at trial that the defendants knew of Taylor's alleged reputation.

Primus's allegation that the defendants are liable for failing to detect an alleged sexual assault similarly lacks any record support. Primus alleges that he awoke in Cell 2 to being sexually assaulted by Taylor –i.e., that Taylor "put a finger in [his] a------."[17] After Primus first made this claim, Authorities reviewed the surveillance footage of Cell 2 from Primus's entry through his release from that cell.[18]

---

[13] *Id.*

[14] *Id.*

[15] Id. at 19–21.

[16] *Id.* at 20.

[17] *Id.*

[18] *Id.* at 31–34.

They also reviewed a log book, which was consistent with the footage.[19] They concluded the surveillance footage showed that Primus was never on his hands and knees (the position in which he alleged the assault occurred). Rather, Primus was lying on the ground with his head facing the back of the cell and his feet near the door for the first two hours.[20] He subsequently sat up and began walking around the cell.[21] The surveillance footage corroborated that a deputy was conducting regular periodic observations.[22] None of the deputies or medical staff who came in contact with Primus observed any sexual act in Cell 2. And none received any reports of such an act from other inmates.[23]

In his statement of undisputed facts, Primus continues to claim that Taylor sexually assaulted him.[24] But Primus has set forth no evidence that defendants knew that a substantial risk of sexual assault existed and then intentionally disregarded that risk. *Farmer*, 511 U.S. at 837. To the contrary, the unrebutted evidence shows that the inmates in Cell 2 were subject to periodic direct observation and video surveillance. There is no evidence that anyone detected or should have detected the alleged assault. Under these circumstances, "[t]he failure of employees to notice and stop the assault constitutes negligence, not deliberate indifference." *Brumfield v.*

---

[19] *Id.* at 31.
[20] *Id.* at 32–34.
[21] *Id.*
[22] *Id.*
[23] *Id.* at 35.
[24] Primus appears to suggest that the inmates did not receive smocks. Defendants have presented uncontroverted evidence, including video footage, that smocks were provided. R. Doc. 78-4 at 10, 15–16, 19, 25–26, 28, 30, 32, 33.

*Natchitoches Par. Det, Ctr.*, 689 F. App'x 309, 309–10 (5th Cir. 2017) (citation omitted). Thus, defendants are entitled to summary judgment on the failure-to-protect and failure-to-intervene claims against them in their individual capacities.

### C. Defendants are entitled to summary judgment on the conditions-of-confinement claims.

Primus alleges that he had neither bedding nor a mattress for an approximately 24-hour period while in Cell 2.[25]  To prevail, Primus must first show that the conditions of his confinement were "so serious as to deprive prisoners of the minimal measure of life's necessities, as when it denies the prisoner some basic human need." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999) (citation omitted). Second, he must show that "the responsible prison officials acted with deliberate indifference to his conditions of confinement." *Id.*

Primus has not met this standard. There is no constitutional right to avoid being placed on suicide watch. *Young v. McCain*, No. 16-03404, 2017 WL 2373244, at *8 (E.D. La. April 24, 2017) (citation omitted), *adopted*, 2017 WL 2371154 (E.D. La. May 31, 2017), *aff'd*, 760 F. App'x 251 (5th Cir. 2019). Primus also fails to demonstrate that he was deprived of "the minimal civilized measure of life's necessities" during his temporary placement in Cell 2. *See Harper*, 174 F.3d at 720. Primus's lack of a mattress and blanket for approximately twenty four hours in Cell 2 did not violate his constitutional rights. In short, "[i]t is reasonable for inmates to be denied clothing and blankets while on suicide watch because it is one of the only

---

[25]While defendants argue that Primus failed to exhaust this claim, they present no evidence to support their argument. R. Doc. 69 at 2, 6–7, 9–12, 14–15, 17–19.

methods of ensuring a suicidal inmates' safety." *Regalado v. City of Edinburg*, No. 7:22-cv-228, 2023 WL 2394299, at *22 (S.D. Tex. Feb. 1, 2023) (citation omitted), *adopted*, 2023 WL 2391014 (S.D. Tex. March 7, 2023), *reconsideration denied*, 2023 WL 11857629 (S.D. Tex. May 2, 2023). For these reasons, Primus's conditions of confinement claims should be dismissed.

### D.    Defendants are entitled to summary judgment on the alleged use of excessive force on November 1, 2023.

Primus alleges in his third amended complaint that "[o]n November 1, 2023[,] Captain Paretti shoved me into a doorway of the dorm I was housed in without warning or provocation from me."[26] He claims that Warden Fleischman and Assistant Warden Simmons witnessed the assault but "did nothing."[27]

Force against a pretrial detainee is "excessive" and therefore a violation of the Fourteenth Amendment when the force is objectively unreasonable. *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). To determine objective reasonableness, courts look to the "facts and circumstances of each particular case." *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Courts consider the following non-exclusive *Kingsley* factors regarding the reasonableness of the force:

> [T]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

---

[26] R. Doc. 69 at 7.
[27] *Id.* at 8.

*Id.* at 397. "[A] court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (alterations in original) (quoting *Bell*, 441 U.S. at 540 (1979)).

To begin, Primus has not set forth any evidence that he incurred any actionable injury. He alleges that he received medical attention for an injury,[28] but he has not described that injury nor provided any evidence of it. And, as discussed below, the video of the incident does not portray a circumstance from which injury could be inferred. Without showing (nor even alleging) an injury that was more than *de minimis*, Primus's claim fails.

Alternatively, Paretti's use of force was objectively reasonable.[29] Defendants' evidence, including the surveillance video, shows that the interaction began when Primus spoke with Paretti, Simmons, and Fleischman in a hallway. Simultaneously, an active medical emergency in an adjacent area caused multiple deputies and medical staff to enter and exit the hallway. Paretti terminated the discussion and ordered Primus to return to his cell. Paretti opened the cell door and commanded Primus four times to enter while gesturing him to go inside. Primus started to enter, but then began to turn back. Using only his right hand, which also held a piece of paper, Paretti guided Primus through the threshold so that the door could be closed.[30]

---

[28] R. Doc. 69 at 8.
[29] R. Doc. 78-2.
[30] R. Doc. 78-5 (jail surveillance video); *see* R. Doc. 78-2 at 2 (affidavit).

Primus claims that he received "no warning" before being "shoved back."[31] The jail surveillance footage, however, contradicts his claim that he was given no warning and that he was "shoved back" into the doorway. *Craig*, 49 F.4th at 409 (citing *Scott*, 550 U.S. at 380–81). Thus, there is no genuine dispute as to these facts.

Courts have consistently found that a pretrial detainee's refusal to comply with repeated orders justifies the use of some degree of force by officers, including in cases in which the force was greater than used on Primus. *See, e.g.*, *Wilcox v. McEvoy*, 6:22-CV-00388-JCB, 2023 WL 6056082, at *6 (E.D. Tex. Aug. 1, 2023) (finding that swatting inmate's hand and pushing his arm back into cell after inmate ignored repeated verbal orders to place his arm back inside the cell was an objectively reasonable use of force), *adopted*, 2023 WL 6048775 (E.D. Tex. Sept. 14, 2023). Moreover, the use of force was minimal and limited to using an open hand to push Primus into a housing unit during a medical emergency in the adjacent housing unit. *See Cain v. Ambriz*, 114 F. App'x 600, 601 (5th Cir. 2004) (holding that an officer's use of an open hand to the face to push an inmate into his cell when he refused to comply with requests was not objectively unreasonable).

As to the threat reasonably perceived by Paretti, Primus's noncompliance with repeated orders inherently created a threat. *See, e.g.*, *Minix v. Blevins*, No. 6:06-306, 2007 WL 1217883, at *24 (E.D. Tex. April 23, 2007) (ruling that disobeying orders poses a threat to the order and security of an institution). And as to the final reasonableness factor, prior to using an open hand to push Primus into the housing

---

[31] R. Doc. 120 at 5.

unit, Paretti gave Primus verbal orders and gestured at least four times for Primus to enter his assigned housing unit. Fleischman also appears to verbally order Primus into the housing unit and pointed toward the door. "The issuance of verbal orders constitutes an effort made to temper the severity of a forceful response." *Grandpre v. Gusman*, No. 17-8935-DEK, 2018 WL 3632364, at *7 (E.D. La. July 31, 2018) (citing *Thompson v. Beasley*, 309 F.R.D. 236, 249 (N.D. Miss. 2015)).

In summary, all *Kingsley factors support* the defendants, and the video of the incident confirms there is no legitimate factual dispute. Therefore, summary judgment for defendant Paretti is warranted with respect to this claim. And given that there was no excessive force, there was no basis or duty for either Fleischman or Simmons to intervene such that summary judgment is warranted in their favor as well. *See Reynolds v. Wood County, Tex.*, No. 22-40381, 2023 WL 3175467, at *4 (5th Cir. May 1, 2023) ("[T]he individual officer-defendants are not liable on Reynolds's bystander liability claim because the underlying excessive force claim fails.").

### E. Defendants are entitled to summary judgment relative to the alleged incident of November 21, 2023.

Primus claims that, even though he filed a PREA complaint relative to Taylor, they were placed in the same housing unit on November 21, 2023.[32] Primus has not identified any risk to his safety based on Taylor's presence in the dormitory on November 21, 2023. While he recently asserted for the first time that he had an "altercation" with Taylor and that he was subject to an "assault," he presented no

---

[32] R. Doc. 69 at 8, 16–17, 19.

additional detail relative to the alleged altercation, assault or any resulting physical injury.[33] *Winding v. Sparkman*, 423 F. App'x 473, 474 (5th Cir. 2011) (citing *Jones v. Greninger*, 188 F.2d 322, 326 (5th Cir. 1999) and 42 U.S.C. § 1997e(e)); *Walzier v. McMullen*, 333 F. App'x 848, 851 (5th Cir. 2009) ("Absent a showing that other inmates harmed Walzier, there is no factual basis for a failure to protect claim."). And, finally, he has not presented evidence that the alleged altercation was the result of anything more than alleged negligence. As discussed below, the decisionmakers who placed the two inmates together were unaware of the prior alleged incident. As a result, defendants are entitled to summary judgment as to this claim.

## F. Defendants are entitled to summary judgment on the alleged PREA retaliation claim.

Primus appears to assert that defendants Van Halen, Fleischman, and Simmons moved Taylor into Primus's housing unit as retaliation for him filing his PREA complaint relative to the alleged sexual assault by Taylor.[34]

A prison official may not retaliate against a prisoner for exercising his First Amendment rights of access to the courts or to complain through proper channels about alleged misconduct at the facility. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (citing *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995)). Prisoners' claims of retaliation should be "carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166). To prevail on a claim of retaliation, a prisoner must be able to establish: (1) he was exercising or

---

[33] R. Doc. 120 at 6; R. Doc. 123 at 6.
[34] R. Doc. 69 at 1, 10.

attempting to exercise a specific constitutional right; (2) the defendant intentionally retaliated against the prisoner for the exercise of that right; (3) the defendant undertook an adverse retaliatory action, greater than *de minimis*, against the inmate; and (4) there is causation: that but for the retaliatory motive, the adverse action would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).

"A prisoner who brings a retaliation claim bears a heavy burden that may not be satisfied with conclusional allegations or his own personal beliefs." *Williams v. Dretke*, 306 F. App'x 164, 167 (5th Cir. 2009).

Primus satisfies the first element because filing a grievance is a constitutionally protected activity. *See, e.g.*, *Richard v. Martin*, 390 F. App'x 323, 325–26 (5th Cir. 2010) (acknowledging that there is a First Amendment right to file a prison grievance); *Woods*, 60 F.3d at 1164. But Primus cannot meet the remaining elements. Primus concedes that Van Halen was unaware of his grievance and acted without a retaliatory motive.[35] With regard to defendants Fleischman and Simmons, Primus fails to present evidence that Taylor's placement in Primus's housing unit would not have occurred but for their desire to retaliate against Primus. The movement of inmates is "an activity which occurs routinely within the prison, [and] does not in and of itself raise the inference of retaliation." *Hurley v. Blevins*, No. 6:04CV368, 2005 WL 997317, at *6 (E.D. Tex. March 28, 2005).

Moreover, "[r]etaliation against a prisoner is actionable *only* if it is capable of deterring a person of ordinary firmness from further exercising his constitutional

---

[35] R. Doc. 120 at 6; R. Doc. 17 at 6–7; R. Doc. 123 at 5.

rights." *Morris*, 449 F.3d at 685–86 (emphasis added). Here, Primus has presented no evidence of a constitutional injury beyond the vague suggestion of an altercation. He has not shown that the act of placing Taylor in his housing unit deterred him from further exercising his First Amendment rights. Conversely, Primus previously submitted evidence that he continued to file grievances after the events of November 21, 2023.[36] *See Young v. Ledet*, No. 20-2165, 2021 WL 799683 (E.D. La. Jan 15, 2021) (finding that retaliation claims failed where prisoner "denie[d] any denial of his right to access the courts or pursue his grievances"), *adopted*, 2021 WL 795981 (E.D. La. March 2, 2021), *appeal dismissed*, No. 21-30161, 2021 WL 4300897 (5th Cir. July 6, 2021). For these reasons, defendants are entitled to summary judgment as to his retaliation claim against them.

### G. Defendants are entitled to summary judgment on the claim that they did not follow jail policies and procedures.

Primus alleges that, when he tried to file a PREA complaint via the jail telephone, the PREA reporting feature was blocked.[37] He admits that the blockage was corrected after he reported the issue in an ARP and an email, and he concedes that he was later able to file his complaint.[38] He further argues that, on November 21, 2023, he was not kept separate from Taylor in violation of the PREA policy and

---

[36] *See* R. Doc. 50 at 4 (grievance dated Sept. 3, 2024); R. Doc. 54 at 2 (grievance dated Sept. 9, 2024).
[37] R. Doc. 69 at 13.
[38] *Id.* at 14; R. Doc. 120 at 3.

protocol, jail policy, and DOC rules and regulations.[39] Defendants correctly argue that these claims must be dismissed.[40]

The PREA does not create a private cause of action or a federal right for purposes of suit under § 1983. *See Krieg v. Steele*, 599 F. App'x 231, 232–33 (5th Cir. 2015). Thus, Primus cannot succeed on his claims against defendants in their individual capacities for alleged violations of the PREA. Nor can Primus succeed on his claims alleging failure to follow jail and/or Department of Correction policies and procedures. A plaintiff is not constitutionally entitled to have the prison follow its own rules. *Perry v. Allemand*, 687 F. App'x 352, 353 (5th Cir. 2017) (citations omitted). Therefore, Primus's claims against defendants under the PREA and for failure to follow prison policies and procedures should be dismissed.

### H. Defendants are entitled to summary judgment on the claims expressing dissatisfaction with the disciplinary process.

Primus asserts that defendants Fleischman, Simmons, and Paretti are liable for failing to act on his grievance, failing to take disciplinary action, or failing to take other action against individuals for holding multiple inmates in suicide observation cells.[41] Defendants correctly assert that these claims must be dismissed.[42]

The Fifth Circuit has repeatedly held that an inmate does not have a constitutional right to an adequate and effective grievance procedure, or to have his complaints investigated and resolved to his satisfaction. *Stauffer v. Gearhart*, 741

---

[39] R. Doc. 69 at 8, 16-17, 19.
[40] R. Doc. 78-1 at 35-36 (citations omitted).
[41] R. Doc. 69 at 16.
[42] R. Doc. 78-1 at 36.

F.3d 574, 587 (5th Cir. 2014) (citing *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005)); *Propes v. Mays*, 169 F. App'x 183, 184-85 (5th Cir. 2006) (concluding that prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor) (citing *Geiger*, 404 F.3d at 373–74). A prisoner has no protected liberty interest in the adequacy or the result of prison administrative grievance procedures. *Smith v. Horton*, 670 F. App'x 872, 873 (5th Cir. 2016) (quoting *Sandin*, 515 U.S. at 484).   Without a constitutional right at issue, Primus's dissatisfaction of the responses by Fleischman, Simmons, and Paretti to his grievances is frivolous. Therefore, summary judgment should be entered in favor of defendants.

## I.    Defendants are entitled to summary judgment on the supervisory and official capacity claims.

Primus also named defendants in their official capacities.[43] As indicated, defendants argue that the official capacity claims against them must be dismissed as they are not policy makers.[44] They also argue that Primus's allegations are insufficient to allege a *Monell* claim.[45] Primus did not respond to these arguments.

First, Fleischman, Simmons and Paretti cannot be liable as supervisory officials under § 1983 pursuant to a theory of *respondeat superior*. *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996); *accord Field v. Corr. Corp. Inc.*, 364 F. App'x 927, 929 (5th Cir. 2010). A supervisory official is liable for subordinates' actions only if the official implemented an unconstitutional policy that caused the plaintiff's injury.

---

[43] R. Doc. 69 at 1.
[44] R. Doc. 78-1 at 6–7.
[45] *Id.* at 20–21.

18

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–95 (1978); *Thompson v. Johnson*, 348 F. App'x 919, 921 (5th Cir. 2009) (citing *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1993)).

To the extent that Primus sues the defendants in their official capacities, such a suit is "really a suit against the municipality that employs the defendant[s]." *Rombach v. Culpepper*, No. 16-556, 2018 WL 1202556, at *4 (E.D. La. Mar. 8, 2018) (citing *Monell*, 436 U.S. at 690 n.55). Thus, Primus's official-capacity claims against defendants are against the St. Tammany Parish Sheriff's Office itself. To succeed on an official-capacity claim under *Monell*, the plaintiff must establish: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (quotations and citations omitted).

"A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos Cty.*, 981 F.2d 237, 245 (5th Cir. 1993); *see also Wetzel v. Penzato*, No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, the plaintiff must identify the policy or custom which allegedly caused the deprivation of his constitutional rights. *See, e.g., Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 F. App'x 315, 316 (5th Cir. 2003); *Wetzel*, 2009 WL 5125465, at *3.

Primus presents no evidence that any of the defendants have any policy-making authority. Further, while Primus broadly claims that there is a "policy of

19

housing multiple naked inmates together,"[46] he fails to present any specific evidence of such a policy nor any evidence that the defendants' decisions reflect official jail policy or custom. Moreover, for the reasons previously explained, Primus failed to establish any constitutional violation related to any of his claims. *See Rios v. City of Del Rio*, 444 F.3d 417, 425–26 (5th Cir. 2006) ("It is facially evident that this test cannot be met if there is no underlying constitutional violation.") (citing *Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000)); *accord Brauner v. Coody*, 793 F.3d 493, 501 (5th Cir. 2015). Finally, defendants correctly assert that Fifth Circuit jurisprudence dictates that Warden Fleischman is not a policymaker. *Guillot ex rel. T.A.G.*, 59 F.4th at 750 ("Official-capacity suits may be brought only against an official acting as a policymaker, such that his decisions represent the official policy of the local government unit . . . [and] [i]n Louisiana, the sheriff [not the warden] is the final policymaker."). Accordingly, any official-capacity claims asserted against defendants should be dismissed.

### J.    State Law Claims

It is unclear whether Primus intended to assert state law claims, such as negligence or assault.  In any event, the Court should decline to consider such state law claims against defendants because Primus lacks a valid federal claim. *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999). The Court therefore recommends that jurisdiction be declined over any supplemental state law claims against these defendants and that those claims be dismissed without prejudice.

---

[46] R. Doc. 117 at 2.

### K.    Injunctive Relief

In his third amended complaint, Primus asks the Court to grant injunctive relief requiring the St. Tammany Parish Jail to provide him with mental health counseling and trauma therapy by an outside physician.[47] He also filed a motion seeking an injunction preventing the jail from housing multiple naked inmates together.[48] In that motion, Primus merely reargues points made in his opposition to the motion for summary judgment.[49] As the Court is recommending that summary judgment be entered in favor of the defendants on all federal claims, Primus is not entitled to injunctive relief. His request for injunctive relief should be denied.

## IV.    RECOMMENDATION

It is therefore **RECOMMENDED** Defendants' Motion to Dismiss, R. Doc. 78, which was converted to a motion for summary judgment, *see* R. Doc. 89, should be **GRANTED**.

It is further **RECOMMENDED** that summary judgment be granted in defendants' favor and that all claims against defendants Daniel Fleischman, Rhonda Simmons, Stephen Paretti, Lieutenant Aaron Mendow, Corporal Van Halen, Corporal Hannah Kairdolf, Deputy Michael Cartner, Deputy Brandon Dussouy, and Deputy Julian Harrington in both their official and individual capacities be **DISMISSED WITH PREJUDICE**.

---

[47] R. Doc. 69 at 20.
[48] R. Doc. 117.
[49] *Id.*

It is **FURTHER RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367(c) and that such claims against these defendants be **DISMISSED WITHOUT PREJUDICE.**

It is **FURTHER RECOMMENDED** that Primus's Motion for Preliminary Injunction, R. Doc. 117, be **DENIED.**

It is **FURTHER RECOMMENDED** that the Clerk of Court be directed to **TERMINATE** Sheriff Randy Smith, Lieutenant Moore, Sergeant Harrison, and Travis Martin because they are not in fact parties to this lawsuit.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 18th day of April, 2025.

_____
EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE